UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60416-CIV-COHN/SELTZER

LOANS OF AMERICA FL, LLC, a Florida Limited
Liability Company,

    Plaintiff,

vs.

RAPID AUTO LOANS, LLC, a Florida Limited
Liability Company, EZ LOAN LOOK UP, INC., a
foreign Corporation, and RICHARD TOLAN, an
individual,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court on Plaintiff's Emergency Motion for Preliminary Injunction [DE 25] ("Motion"). The Court has carefully considered the Motion, Defendant's Response to Plaintiff's Emergency Motion for Preliminary Injunction [DE 29] ("Response"), the parties' related submissions, the evidence admitted at the hearing before this Court on July 9, 2010, the record, and is otherwise advised in the premises.

### I. BACKGROUND

Plaintiff is a consumer finance company that provides immediate short term cash loans based on certain collateral, typically vehicles. Defendant EZ Loan Look Up, Inc. ("EZ") is a national car title loan network that obtains car title loan applications ("leads") via its website and distributes the leads to its clients in the car title loan industry.

On or about December 11, 2009, Plaintiff and EZ and Richard Tolan (together with EZ, "Defendants") entered into a Marketing Agreement ("Agreement") and

Defendants began providing Plaintiff with leads. Pursuant to the Agreement, EZ and Tolan agreed, among other things, not to (1) divulge any of the Plaintiff's confidential and proprietary information, or (2) compete with Plaintiff.

On March 19, 2010, Plaintiff filed this action alleging trademark infringement, unfair trade practices and breach of contract against Rapid Auto Loans, LLC, EZ and Richard Tolan. On or about May 5, 2010, Plaintiff filed a stipulation of dismissal as to Rapid Auto Loans, LLC after reaching a settlement.

On June 29, 2010, more than three months after the Complaint was filed, Plaintiff filed the instant Motion, which is styled as an "Emergency." The Motion provides no explanation what has changed in the three months since the Complaint was filed that now constitutes an emergency. Nevertheless, the Court promptly scheduled a hearing on the Motion for July 9, 2010.

1. **Plaintiff's Motion**

Plaintiff asserts that it is a consumer finance company that has cultivated and developed substantial business, including goodwill associated with its trade name and through its legitimate business practices. In addition, Plaintiff claims that the "consumer finance business is unique state to state in light of the complex statutory regulation and license agreements. Through its years in business, [Plaintiff] has developed processes and business practices that allow it to succeed in light of this regulation." Id. at 2. The Motion states that "[i]n order to protect its legitimate business interests, including, but not limited to, its confidential and proprietary information, customer lists, goodwill in the business and trade secrets, [Plaintiff] has many of its employees and business vendors execute confidentiality, non-disclosure or marketing agreements." Id.

On December 11, 2009, the Plaintiff and Defendants entered into the Agreement whereby the Defendants agreed to assist Plaintiff in its marketing efforts and expand its customer base. According to the Motion, "[i]n light of [Plaintiff's] experience in the industry and strong compliance plan with state regulation, [Plaintiff] had to teach and introduce EZ and Tolan into converting its general lead information into valuable and useful information." Id. at 3. Specifically, Plaintiff sets forth the following:

- To protect the respective parties, the Agreement contained restrictive clauses regarding confidentiality, statutory compliance, non-solicitation, non-circumvent and non-compete. See DE 25-2 ¶ 7.

- Both EZ and Tolan, in the Agreement, admit that they had no prior knowledge of Plaintiff's business model and programs, and therefore, whatever knowledge they learned was from the Plaintiff directly. Id. ¶ 7(a) and (h).

- In paragraph (h), EZ and Tolan acknowledge that Plaintiff "has expended time and money in developing and/or revising this Business . . . " and agree to injunctive relief in breach of the covenants of the Agreement. See id. ¶ 7(h).

- In the Agreement's non-compete clause, EZ and Tolan "acknowledge that they have no prior or current relationship" with a similar business to Plaintiff. See id. ¶ 7(f).

- EZ and Tolan agreed that resulting work was the property of Plaintiff. See id. ¶ 7(j).

The Motion goes on to state that "[i]n order to engage in these activities, both EZ and Tolan were granted access to Plaintiff's screening protocol, unique processing system and potential customer evaluation, as well as other proprietary information for preparing modifying general information into valuable information for reviewing potential customers with the statutory regulation." DE 25 at 4. "This information provided by [Plaintiff] was not generally known to the public and were subject to [Plaintiff's] extreme efforts to maintain their confidentiality." Id.

The Motion continues as follows:

> Subsequent to the signing of the Agreement, both EZ and Tolan have been assisting themselves, as well as other third party entities, in the diversion of Plaintiff's business, or acting in concert with other parties to compete with the Plaintiff including, but not limited to, soliciting from Plaintiff, circumventing Plaintiff and disclosing confidential and proprietary information that is covered by the Agreement. Plaintiff and former Defendant Rapid Auto Loans, LLC have resolved their dispute as Rapid Auto Loans has stipulated to cease its current and future marketing efforts and lead generation with EZ and Tolan based on the Agreement as it admitted to previously working with EZ in this competitive business.

Id. at 5.

**2.   Defendants' Response**

Defendants oppose injunctive relief arguing that Plaintiff cannot demonstrate a substantial likelihood of success on the merits. Defendants argue that a "restrictive covenant cannot be used as a method of stifling competition, rather, in order for the restrictive covenant to be enforceable; the employer must show 'special facts over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer.'" DE 29 at 4 (quoting Passalacqua v. Naviant, Inc., 844 So. 2d 792, 795 (Fla. Dist. Ct. App. 4th Dist. 2003)).

Defendants also argue that Plaintiff has failed to demonstrate any legitimate business interest. Specifically, Defendants contend that information such as regulatory compliance, screening protocol, potential asset evaluation and business methodology do not constitute trade secrets or valuable confidential business information. DE 29 at 6. Defendants argue as follows:

4

> Every consumer finance company doing business in Florida must be able to comply with State regulations; compliance is not a trade secret or proprietary information. [Plaintiff's] screening protocol, potential asset evaluation and consumer financing business methodology are used throughout car title lending industry in the State of Florida; they are not unique to [Plaintiff]. [Plaintiff's] own website provides information as to these elements as well as to its marketing plan to expand its business into several states.

Id.

In support, Defendants cite a number of cases. "[I]nformation that is commonly known in the industry and not unique to the allegedly injured party is not confidential and is not entitled to protection." AutoNation, Inc. v. O'Brien, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004); see also Lear, Inc. v. Adkins, 395 U.S. 653, 668 (1969) ("[F]ederal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent.").

In addition, Defendants raise the following factual arguments:

- Plaintiff claims that Defendants are directly competing with the Plaintiff. However, Plaintiff fails to identify a single customer who is both a customer of Defendants and a former customer of Plaintiff or a single customer Plaintiff maintains a substantial relationship within the State of Florida. See DE 29 at 7.

- Plaintiff has not provided evidence that Defendants have developed substantial relationships with specific prospective or existing customers. Plaintiff asserts that Defendants are indirectly competing with the Plaintiff by working with Plaintiff's competitor, Rapid Auto Loans, LLC. However, there has never been a business transaction between Defendants and Rapid Auto Loans, LLC. See DE 29 at 7; DE 29-1 at 2-3.

- Plaintiff alleges that Defendants have started a marketing campaign to directly and indirectly compete with Plaintiff. Plaintiff's allegation is based on a facsimile Jay Wetcher received. Defendants sent the facsimile to Plaintiff in hopes of resurrecting their business relationship. See DE 29 at 7; DE 29-1 at 2-3.

- Mr. Wetcher states Plaintiff has established goodwill through its trade name "Loans of America." DE 29-1 at 2. However, Plaintiff has not provided evidence that Defendants have affected Plaintiff's goodwill with its customers through (a) its trade name; (b) geographic area; or (c) trade area.

- Plaintiff contends that it provided Defendants with training to enable them to convert the general lead information obtained through EZ's website into useful information for Plaintiff. See, e.g., DE 25-3 at 3. However, EZ is a national car title loan network with extensive experience providing car title loan companies with lead information. Florida lenders require the same information; Defendants provide leads in the same format with all lenders and have not made any changes as to the information or how it is provided. See DE 29-1 at 2.

- The "valuable and useful information" required by Plaintiff as referred to by Mr. Wetcher is industry standard and can easily be found on Plaintiff's website loan application. The "training" Plaintiff provided is not specialized enough to be classified as "extraordinary" within the meaning of the statute. DE 29 at 9.[1]

Finally, Defendants argue that "[e]ven if this Court were to find some alleged infringement on the part of [Defendants], there exists adequate monetary remedies available to Plaintiff should it prevail in the dispute." DE 29 at 10. "Mr. Wetcher indicates their business is suffering, yet he does not specifically state how it is suffering." Id. at 11.

### 3. July 9, 2010 Hearing

At the hearing, several witnesses provided testimony. Plaintiff's corporate manager, Vickie Goldstein, testified largely about the drafting and execution of the Agreement. Jay Wetcher, Plaintiff's controller, provided testimony which serves as the primary basis for Plaintiff's request for injunctive relief. In particular, Mr. Wetcher testified that two customers, whose names were included in the leads Defendants provided to Plaintiff, ultimately obtained loans from one of Plaintiff's competitors. Mr. Wetcher also testified that the facsimile sent to Plaintiff by Defendants on April 19, 2010 without a cover letter is evidence of a mass marketing campaign. In addition, Mr.

---

[1] "Training is classified as extraordinary when it exceeds what is usual, regular, common, or customary in the industry in which the employee is employed." Dyer v. Pioneer Concepts, 667 So. 2d 961, 964 (Fla. Dist. Ct. App. 2d Dist. 1996) (quotation omitted).

6

Wetcher testified that Plaintiff recently experienced a 20% decrease in the volume of loan applications. Mr. Wetcher stated that this drop was the result of Defendants' competition rather than market conditions.

On cross examination, Mr. Wetcher testified that he did not have any personal knowledge that Defendants have either disclosed Plaintiff's confidential information or used Plaintiff's proprietary information to compete with Plaintiff. Wetcher also testified that he did not have any personal knowledge that Defendants were doing business with Rapid Auto Loans, LLC, one of Plaintiff's competitors.

Richard Tolan, President of EZ, testified that, although he has spoken with Rapid Auto Loans, LLC, EZ has not conducted any business whatsoever with the company. Tolan further testified that the facsimile sent to Plaintiff on April 19, 2010 was not part of a mass marketing campaign, but rather an effort to rejuvenate the business relationship between Plaintiff and EZ.[2]

## II. ANALYSIS

In order to obtain a preliminary injunction, Plaintiff must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendants; and (4) granting the preliminary injunction will not disserve the public interest. Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994). Because a

---

[2] At the hearing, Defendants also pressed the argument that the Agreement was rescinded or otherwise invalid. This argument, however, was not fully articulated in Defendants' Response. Because Plaintiff's request for injunctive relief fails for other reasons, the Court will not discuss Defendants' contractual arguments.

"preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." Id. (quoting Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)); see also McDonald's Corp. v. Roberts, 147 F.3d 1301, 1306 (11th Cir. 1998).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." Canal Auth. of the State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." Id. at 573; see also All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989) ("Preliminary injunctions are issued when drastic relief is necessary to preserve the status quo.").

To obtain a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). This presumption, however, is rebuttable. JonJuan Salon, Inc. v. Acosta, 922 So. 2d 1081, 1084 (Fla. Dist. Ct. App. 2006). The Eleventh Circuit has described irreparable harm as follows:

> [T]he key word in this consideration is "irreparable." Mere injuries, however substantial, in terms of money, time, and injury necessarily expended in the absence of a stay are not enough. The possibility of adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

United States of America v. Jefferson County, 720 F.2d 1511 (11th Cir. 1983).

At the hearing, Plaintiff's counsel argued that injunctive relief was warranted because (1) two customers included in the leads EZ provided to Plaintiff obtained loans from Rapid Auto Loans, LLC; (2) Tolan informed Plaintiff that EZ was going to enter Florida in a "big way;" (3) the April 19, 2010 facsimile; and (4) the 20% decrease in Plaintiff's loan applications. Plaintiff's counsel further argued that an injunction was necessary to eliminate the threat of future breaches.

The Court concludes that Plaintiff has failed to meet its burden to warrant the extraordinary remedy of injunctive relief because Plaintiff did not present clear evidence to establish a substantial likelihood of success on the merits. Plaintiff's primary witness, Mr. Wetcher, did not possess any personal knowledge that Defendants have either disclosed confidential information or engaged in business with Plaintiff's competitors. On the other hand, Mr. Tolan categorically denied that EZ has done so. Despite Plaintiff's efforts to undermine Tolan's credibility, the lack of affirmative evidence is fatal to Plaintiff's request.

In addition, Mr. Tolan's statement that EZ was going to enter Florida in a "big way" does little to further Plaintiff's case. Also, Plaintiff's claim that Defendants engaged in a mass marketing campaign is based solely on the fact that the April 19, 2010 facsimile was sent without a cover page. Yet Defendants denied that the transmission was sent to any additional companies and Plaintiff has presented no evidence to the contrary. Finally, Mr. Wetcher's testified that the 20% reduction in

Plaintiff's business was directly tied to Defendants' competition. Mr. Wetcher's testimony, however, was conclusory and not supported by any documents. Accordingly, Plaintiff failed to make the clear showing necessary for injunctive relief.

For similar reasons, the Court also cannot conclude that the Plaintiff will suffer irreparable harm if an injunction does not issue. Plaintiff did not present any evidence to demonstrate that Plaintiff's goodwill or reputation has been damaged. Therefore, the Court finds that monetary relief would be adequate in the event Plaintiff ultimately succeeds on the merits.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** Plaintiff's Emergency Motion for Preliminary Injunction [DE 25] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that the trial in this matter will be reset for December, 2010. The Court shall reset all pretrial deadlines in a separate order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 12th day of July, 2010.

_____
JAMES I. COHN
United States District Judge

Copies furnished to:

Counsel of record via CM/ECF